IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHARLOTTE GREGORY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | C.A. No. _5:16-cv-427_ |
| v. | § | |
| | § | |
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## EXHIBIT B - INDEX OF STATE COURT DOCUMENTS

1.    Copy of the Civil Docket Sheet;

2.    Plaintiff's Original Petition filed 04/06/2016;

3.    Civil Case Information Sheet filed 04/06/2016;

4.    Request for Process filed 04/06/2016;

5.    Citation to Standard Insurance Company filed 04/18/16; and

6.    Defendant's Original Answer filed 05/03/2016;

Respectfully submitted,

By: _s/ Ryan K. McComber_____
    Ryan K. McComber
    State Bar No. 24041428
    ryan.mccomber@figdav.com
    Kristina A. Kiik
    State Bar No. 24074532
    kristina.kiik@figdav.com

FIGARI + DAVENPORT, LLP
901 Main Street, Suite 3400
Dallas, Texas  75202
Tel:  (214) 939-2000
Fax:  (214) 939-2090

ATTORNEYS FOR DEFENDANT
STANDARD INSURANCE
COMPANY

## CERTIFICATE OF SERVICE

    I certify that all attorneys deemed to accept service of the above-referenced document electronically will be notified via the Court's CM/ECF system and all others will be notified via certified mail, return receipt requested on this 9th day of May, 2016.

    _s/Ryan K. McComber_____
    Ryan K. McComber

RUN DATE: 05/06/2016 Bexar County Centralized Docket System Pg: 1   PGM: DKB4900P
RUN TIME: 12:18:39                                                  JCL: SPPROD

---

**DOCKET INFORMATION**

CAUSE NUM: 2016CI05933

DATE FILED: 04/06/2016       COURT: 408       UNPAID BALANCE:       0.00

TYPE OF DOCKET: DEBT/CONTRACT

**STYLE**

CHARLOTTE GREGORY
VS STANDARD INSURANCE COMPANY

ACCOUNT TYPE:               ACCOUNT NO:

ACCESS: 0                   STATUS: PENDING

LIST TYPE: C

**LITIGANT INFORMATION**

SEQ   LAST /FIRST /MIDDLE NAME           LIT. TYPE/ATTORNEY        DATE

00001 GREGORY CHARLOTTE                  PLAINTIFF                 04/06/2016
                                           00001 TAYLOR, JESSICA SPANGLER

00002 STANDARD INSURANCE COMPANY         DEFENDANT                 04/06/2016
                                           00003 MCCOMBER, RYAN K

**SERVICES INFORMATION**

SEQ   SERVICE TYPE / DATES               DIST   LITIGANT NAME

00001 CITATION CERTIFIED MAIL            150
        ISS: 04/08/2016  REC: 04/08/2016  EXE: 04/14/2016  RET: 04/18/2016

**ATTORNEY INFORMATION**

SEQ   DATE FILED  BAR NBR.  NAME                    STATUS     DATE

00001 04/06/2016  24013546  TAYLOR, JESSICA SPAN    SELECTED   04/06/2016
00003 05/03/2016  24041428  MCCOMBER, RYAN K        SELECTED   05/04/2016

**PROCEEDING INFORMATION**

SEQ   DATE FILED        REEL     IMAGE    PAGE COUNT

00001 04/06/2016        0000     0000     0000
        DESC: JURY DEMAND JURY FEE PAID
00002 04/06/2016        0000     0000     0000
        DESC: PETITION
00003 04/06/2016        0000     0000     0000
        DESC: SERVICE ASSIGNED TO CLERK 2
00004 04/06/2016        0000     0000     0000
        DESC: CIVIL CASE INFORMATION SHEET
00005 04/06/2016        0000     0000     0000
        DESC: REQUEST FOR SERVICE AND PROCES
00006 05/03/2016        0000     0000     0000
        DESC: ORIGINAL ANSWER OF
              STANDARD INSURANCE COMPANY

Exhibit

1

exhibitsticker.com

RUN DATE: 05/06/2016 Bexar County Centralized Docket System Pg: 2  PGM: DKB4900P
RUN TIME: 12:18:39                                                 JCL: SPPROD

**T R I A L     I N F O R M A T I O N**

| SEQ | DATE FILED | COURT | SETT. DATE | TIME | ATTY |
|-----|------------|-------|------------|------|------|

**O R D E R     I N F O R M A T I O N**

| SEQ | DATE FILED | JUDGE NAME | VOLUME | PAGE | PAGE CNT | AMOUNT | SOF |
|-----|------------|------------|--------|------|----------|--------|-----|

**B O N D     I N F O R M A T I O N**

| SEQ | DATE FILED | PRINCIPAL |
|-----|------------|-----------|

FILED
4/6/2016 10:01:04 AM
Donna Kay McKinney
Bexar County District Clerk
Accepted By: Michelle Garcia

**CITCM W/JD SAC2**

CAUSE NO. __2016CI05933__

| | | |
|---|---|---|
| **CHARLOTTE GREGORY,** | § | **IN THE DISTRICT COURT** |
| | § | |
| **Plaintiff.** | § | |
| | § | |
| **VS.** | § | __408__ **DISTRICT COURT** |
| | § | |
| **STANDARD INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| **Defendant.** | § | **BEXAR COUNTY, TEXAS** |

<u>**PLAINTIFF'S ORIGINAL PETITION**</u>

Charlotte Gregory ("Plaintiff" or "Gregory") files this Original Petition against Standard Insurance Company ("The Standard").

### A.    DISCOVERY-CONTROL PLAN

1.    Plaintiff intends to conduct discovery under Level 3 of the Texas Rules of Civil Procedure. This case involves complex issues and will require extensive recovery. Therefore, Plaintiff asks the Court to order that discovery be conducted in accordance with a discovery control plan tailored to the particular circumstances of this suit. Plaintiff affirmatively pleads that this suit is not governed by the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff seeks monetary relief over $100,000.

### B.    RELIEF

2.    Plaintiff seeks monetary relief over $200,000 but not more than $1,000,000. Tex. R. Civ. P. 47(c).

### C.    PARTIES

3.    Plaintiff, Charlotte Gregory, is an individual and resident of Bexar County, Texas.

Exhibit

2

4.     The Standard is an insurance company licensed to do business in Texas, with its principal place of business in Oregon.  The Standard can be served with citation by serving its Attorney for Service, C T Corporation System, by certified mail, return receipt requested, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

## D.     JURISDICTION

5.     The Court has subject matter jurisdiction over the lawsuit because the amount in controversy exceeds this Court's minimum jurisdictional requirements.

## E.     VENUE

6.     Venue is mandatory and proper in this district because all or a substantial part of the events or omissions giving rise to the claim occurred in Bexar County.

## F.     CONDITIONS PRECEDENT

7.     All conditions precedent to recovery have been performed, waived, or have occurred.

## G.     FACTUAL BACKGROUND

8.      Gregory was employed as a principal—a light duty occupation—at Miller Elementary School in San Antonio, Texas by the San Antonio School Independent School District ("SAISD").

9.     While employed by SAISD, Gregory enrolled in two employee benefit plans—one that provided group life and accidental death and dismemberment insurance benefits ("Life Plan") and the other that provided group long-term disability benefits ("LTD Plan").  Both plans were insured through policies issued by The Standard.  When Gregory enrolled in the LTD Plan, The Standard represented to her that the LTD policy would provide her disability benefits if she

met the definition of disability under the policy and would continue to provide her benefits if she continued to be disabled under the policy. Similarly, The Standard represented that if she became totally disabled her benefits under the Life Plan would continue and her premiums would be waived while she remained disabled.

10. The LTD Policy provided the following definition of "Disability" for the first 24-months of the payment of LTD benefits:

> During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.
>
> You are Disabled from your Own Occupation if, as a result of Physical Disease…:
>
> 1. You are unable to perform with reasonable continuity the Material Duties of your Own Occupation; and
> 2. You suffer a loss of at least 20% in your Indexed Predisability Earnings when working in your Own Occupation.

11. After the payment of 24-months of LTD benefits, the LTD Policy changed the definition of Disability to apply to "Any Occupation," rather than a claimant's "Own Occupation:"

> You are disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of Any Occupation.
>
> Any Occupation means any occupation or employment which you are able to perform, whether due to education, training, or experience, which is available at one or more locations in the national economy and in which you can be expected to earn at least 60% of your Indexed Predisability Earnings within twelve months following your return to work, regardless of whether you are working in that or any other occupation.

12. The Life policy provided that her coverage would continue without payment of premiums if she met the following definition of "Total Disability:" "as a result of Sickness, accidental Injury, or Pregnancy you are unable to perform with reasonable certainty the material

duties of any gainful occupation for which you are reasonably fitted by education, training and experience."

13.    Gregory ceased working for SAISD in any capacity on December 11, 2012 as a result of severe joint pain and swelling, all over body pain, left chest wall pain with difficulty breathing, and chronic fatigue caused by her diagnoses of lupus, rheumatoid arthritis ("RA") and fibromyalgia.   As a result of her symptoms, she had extreme difficulty gripping, typing or writing with her hands, was suffering from brain fog that caused slow cognition and memory problems, and had limited mobility.

14.    Gregory applied for benefits under the LTD Plan with The Standard on or about December 14, 2012.   As part of her application, she submitted an Attending Physician Statement from her rheumatologist, Dr. Brian Winn, who had instructed Gregory to stop working.   In the APS, **Dr. Winn stated that as a result of her physical impairments caused by her symptoms of lupus and fibromyalgia she could not sit, stand or walk for more than 15 minutes at a time and could only infrequently write or use a keyboard.   He also noted that she was suffering from cognitive difficulties as a result of her lupus, including memory loss and poor concentration.**

15.    As part of its initial investigation, The Standard gathered medical records from Dr. Winn, Dr. Lisa Cabrera, Gregory's nephrologist, and Dr. Jose Font, her cardiologist.   Dr. Winn's office visit notes showed that Gregory had been diagnosed with lupus, RA, fibromyalgia, Sjogren's syndrome, hyperlipidemia, hypertension, hypothyroidism and asthma.   They also revealed had been suffering from the following symptoms from her lupus, RA and fibromyalgia: cognitive issues due to the overlap of her lupus and RA, including mental fatigue, brain fog, poor concentration and memory problems; trouble breathing; chronic, widespread body pain; severe

4

swelling in her hands and feet; and severe daily left-sided chest wall pain. **Dr. Winn advised Gregory during an office visit in October 2012 that she could no longer work, even if her condition substantially improved with medication.** The office visit notes also documented that Gregory was currently taking, among other medications, Norco—a narcotic pain reliever; Methotrexate—an immunosuppressant used in the treatment of RA; Enbrel—a TNF inhibitor used in the treatment of RA; Plaquenil—an immunosuppressant used in the treatment of lupus; Nuvigil—for the treatment of brain fog caused by lupus; Lyrica—for her neuropathy and chronic muscle pain; and Toprol—for the treatment of angina and hypertension; and Advair—for the treatment of asthma. Dr. Winn's records also showed that she was suffering from severe side effects from methotrexate, including malaise and fatigue, and that Gregory was unable to take Norco during the day for pain while she worked because it made her drowsy. Dr. Winn's records also included the results of an eye exam in July 2012, which showed Gregory had been diagnosed with Sjogren's syndrome, an immune system disorder associated with lupus and RA that is characterized by symptoms of dry eyes and dry mouth.

16.     The office visit notes from Dr. Cabrera showed that she was monitoring Gregory's kidney function along with her associated diagnoses of hypokalemia—a deficiency of potassium in her bloodstream—and hypocalcemia—a deficiency of Vitamin D. They also showed that she had prescribed Gregory with Prednisone—a corticosteroid used to reduce joint swelling and pain caused by lupus and RA. The office visit notes from Dr. Font indicated that she was suffering from a severe lupus flare and that he was treating her for her resulting severe chest wall pain.

17.     After receiving these records, The Standard referred Gregory's claim for an in-house nurse review. **The nurse concluded,** based on her review of Gregory's medical records,

that Gregory was impaired by **widespread body pain, hand and finger swelling, and mental and physical fatigue**, the latter of which could be a result of lupus, side effects from methotrexate, and/or fibromyalgia. The nurse opined that it was reasonable to conclude that Gregory was precluded from performing her light-duty job as a principal. **She particularly emphasized that Gregory would be unable to perform the cognitive requirements of her occupation.**

18.    Based on the information Gregory submitted with her claim, The Standard notified her on February 22, 2013 that it had approved the payment of monthly LTD benefits because it had concluded she was disabled from performing her "Own Occupation" under the LTD policy. Eventually, **The Standard also approved Gregory for a waiver of premiums under her Life Plan due to her "Total Disability"**—*i.e.,* **her inability to perform** *any gainful occupation.*

19.    Although The Standard concluded that Gregory was disabled from performing her own occupation as an elementary school principal, it conducted frequent investigations into whether she continued to be eligible for LTD benefits.

20.    The Standard notified Gregory on October 24, 2013 that it was conducting a review of her claim to determine if her disability was caused or contributed to by the 24-month limit for her entire lifetime for the payment of LTD benefits due to "Other Limited Conditions" in the LTD policy. Under the policy, "Other Limited Conditions" means:

> chronic fatigue conditions (such as chronic fatigue syndrome, chronic fatigue immunodeficiency syndrome, post viral syndrome, limbic encephalopathy, Epsein-Barr virus infection, herpes virus type 6 infection, or myalgic encephalomyclitis), any allergy or sensitivity to chemicals or the environment (such as environmental allergies, sick building syndrome, multiple chemical sensitivity syndrome or chronic toxic encephalopathy), chronic pain conditions (such as fibromyalgia, reflex sympathetic

dystrophy or myofascial pain), carpal tunnel or repetitive motion syndrome, temporomandibular joint disorder, or craniomandibular joint disorder.

However, Other Limited Conditions does not include neoplastic diseases, neurological diseases, endocrine diseases, hematologic diseases, asthma, allergy-induced reactive lung disease, tumors, malignancies, or vascular malformations, demyelinating diseases, or lupus.

Although Gregory had been diagnosed with fibromyalgia, she also had diagnoses of lupus—which was expressly excluded from the definition of "Other Limited Conditions"—and RA—which was impliedly excluded from the definition. Therefore, The Standard had no reasonable basis to commence this investigation and was merely harassing Gregory.

21.     As part of its unreasonable investigation, The Standard gathered updated medical records from Dr. Winn and Dr. Cabrera.  In Dr. Winn's office visit notes from March 27, June 27, and September 25, 2013, he noted that Gregory was still suffering from many of the severe symptoms from lupus, RA and fibromyalgia that he noted in his records in late 2012, including increased symptoms of asthma, severe swelling in her hands, chest wall pain, memory problems associated with brain fog, chronic all over body pain and significant daily fatigue.  He also noted that she continued to take the same medications that he listed in the last records he provided The Standard.  **He expressly noted in the records that Gregory could not return to work.**  In Dr. Cabrera's records, she noted that she was treating Gregory for proteinuria—the presence of abnormal quantities of protein in the urine, which can indicate kidney damage—a common side effect of lupus.

22.     After The Standard received Gregory's updated medical records, it referred her claim to its salaried, in-house physician consultant, Dr. Ronald Fraback. whose

primary responsibility is to render medical opinions solely based on his review of claimants' medical records, and who, upon information and belief, had not actively practiced medicine for almost 16 years when he first reviewed Gregory's claim. The Standard asked Dr. Fraback whether Gregory's medical records supported limitations and restrictions of such severity as to prevent her from performing her light-duty occupation, whether she met the American College of Rheumatology ("ACR") criteria for fibromyalgia and whether her condition would likely improve.

23.     After reviewing Gregory's medical records, **Dr. Fraback concluded: (1) that her lupus and RA were her primary limiting conditions and that he believed she was unable to return to light-duty work;** (2) that she met the ACR criteria for fibromyalgia; and (3) that her condition might eventually improve to the point that she might be able to perform a sedentary job. He recommended that The Standard request Gregory's updated medical records in 4-6 months.

24.     The Standard never notified Gregory of the result of its investigation as to whether her disability fell under the "Other Limited Conditions" 24-month limit on lifetime LTD benefits. Instead, it notified her by letter on January 7, 2014 that it was then commencing an investigation to determine if she would meet the "Any Occupation" definition of disability—which would become effective on January 11, 2015, 24 months after her LTD benefits became payable and more than a year in the future.

25.     As part of this "new" investigation, The Standard once again requested Gregory's updated medical records from Dr. Winn. Dr. Winn's office visit notes from June 27, September 25, and December 23, 2013, revealed that **Gregory was still suffering from significant malaise and fatigue, severe left-sided chest wall pain, significant swelling in her fingers and hands,**

**and chronic all over body pain.** Dr. Winn also noted that Gregory was suffering from severe flu-like symptoms from her methotrexate, so he ordered her to stop taking it at her December 23 visit. Although Dr. Winn noted that Gregory's fibromyalgia had improved as a direct result of her stopping work, **he also noted that he believed her condition would worsen if she was forced to return to work.**

26.     After receiving the updated records, The Standard once again referred Gregory's claim to Dr. Fraback and asked him to opine on what her current restrictions and limitations were, what they would be in January 2015 and whether he could anticipate a change in Gregory's condition.

27.     After reviewing Gregory's updated medical records, Dr. Fraback unsurprisingly concluded in his report dated April 5, 2014, that as early as January 2014, Gregory should have been able to perform sedentary-level work with only "occasional fingering, handling, and keyboarding." **He conceded that the swelling in her fingers was likely the result of synovitis secondary to lupus and that if her swelling subsided, she might then "be able to do up to frequent fingering, handling and keyboarding."** Dr. Fraback also stated that "it [was] somewhat difficult to predict" what Gregory's limitations and restrictions would be as of January 11, 2015. In conclusion, he recommended that The Standard gather updated medical records in 6 months.

28.     The Standard then referred Gregory's claim to Brian Petersen, a vocational case manager, for a vocational analysis to determine whether she could perform "Any Occupation"— *i.e.,* a sedentary level job based on her education, training and experience. It appears that the Standard only provided Petersen with a form completed by Gregory in which she detailed her education, training and job experience, and not Dr. Fraback's report, in which he opined that

Gregory could only occasionally finger, handle or keyboard.  Unsurprisingly, Petersen concluded that there were several sedentary-level jobs Gregory could perform—Education Consultant, Educational Specialist and Schools Superintendent—all of which would require her to frequently use a keyboard, a task even Dr. Fraback believed she could not perform.

29.     Given that the "Any Occupation" definition of disability would not become effective until January 2015, and therefore, The Standard did not yet have a basis to terminate Gregory's benefits, it calendared her claim for another review in early 2015.

30.     In April 2014, The Standard received notice that Gregory had been approved for Social Security Disability Insurance ("SSDI") benefits.  While The Standard readily took its offset for those benefits from Gregory's monthly LTD benefit, it never obtained Gregory's file in connection with her Social Security claim—a file that was readily available to it given that The Standard hired an attorney for Gregory to pursue her claim for those benefits.  Had The Standard requested these documents, it would have obtained a copy of a neuropsychological examination a psychologist performed on Gregory on January 14, 2014, in which **the psychologist opined that Gregory was suffering from a mood disorder which caused her impairments in social and academic functioning and she had moderate difficulties with daily functions and adaptive behaviors.**

31.     In March 2015, The Standard once again gathered Gregory's updated medical records from Dr. Winn and Dr. Cabrera.  Dr. Winn's office visit notes from March 24, June 5, August 25, October 24, and December 30, 2014 and February 3 and March 2, 2015, revealed that she was still suffering from severe left-sided shoulder and chest wall pain, she still had swelling in her fingers, she had an acute exacerbation of her asthma, she had started having severe temporomandibular joint disorder ("TMJ") pain and diffuse paresthesia—a pins-and-needles or

skin-crawling sensation—all over her body, and that she still suffered all over body aches and joint pain.

32.     Dr. Cabrera's most recent office visit notes showed that Gregory was still experiencing proteinuria and that she had restarted Gregory on methotrexate, even though it had previously caused her severe side effects.

33.     After gathering the medical records, The Standard once again referred Gregory's claim to Dr. Fraback and asked him to identify her ongoing restrictions and limitations, to determine whether her disability was caused by "Other Limited Conditions," including chronic fatigue, chronic pain or temporomandibular or craniomandibular joint disorder, to determine whether she had a neoplastic, neurologic, hematologic, pulmonary, vascular, or autoimmune disorder such as lupus—*i.e.,* the exclusion to the 24-month lifetime payment of LTD benefits for "Other Limited Conditions"—and whether he anticipated a material change in her condition.

34.     In his April 4, 2015 report, **Dr. Fraback once again opined that Gregory could perform sedentary-level work with only "occasional fingering, handling, reaching and keyboarding" "due to [her] hand puffiness." He further opined that her primary disabling condition was an overlap of lupus and RA,** that her fibromyalgia did not prevent her from working, and that he believed she would have an improvement in her condition in the future. Dr. Fraback recommended The Standard request her updated medical records in 6 months.

35.     The Standard then referred Gregory's claim for another vocational review with Brian Petersen. This time, The Standard apparently provided Petersen with Dr. Fraback's most recent report. On April 10, 2015, Petersen reiterated his opinion from his previous report that there were three sedentary level jobs he believed Gregory could perform, despite the fact that Dr.

Fraback did not believe Gregory could finger, handle, reach or keyboard on more than an occasional basis.

36.     Based entirely on Dr. Fraback's April 4, 2015 report and Petersen's April 10, 2015 vocational analysis, The Standard erroneously concluded that Gregory could perform the sedentary occupations identified by Petersen, and therefore, she no longer met the definition of "Disability" for purposes of the LTD Plan or the definition of "Total Disability" under the Life Plan for her premium waiver benefits.   In its April 21, 2015 letter advising Gregory of its decision, it explained that its decision in connection with her LTD benefits was based both on the fact that it believed she could perform "Any Occupation" and the fact that her diagnosis of fibromyalgia contributed to her disability and therefore she was subject to the 24-month limit on the payment of LTD benefits for "Other Limited Conditions."   It reached this latter conclusion despite the fact that Dr. Fraback had repeatedly opined her disability was caused by her lupus and RA, not her fibromyalgia.   While The Standard briefly mentioned that Gregory had been awarded SSDI benefits, it stressed that the Social Security Administration used different factors to determine disability than it did and admitted that although it had requested a copy of her SSDI file on one occasion (which included the results of her neuropsychological exam), it had not followed up on the request.

37.     Gregory appealed The Standard's decision on July 28, 2015 and submitted additional medical records from Dr. Winn and information about lupus-induced brain fog.  Dr. Winn's April 10, June 2, and July 2, 2015 office visit notes revealed that **Gregory's Sjogren's syndrome had become so severe that it became necessary for her to have all her teeth extracted, that she was suffering from right shoulder and wrist pain, that her memory and loss of concentration problems had worsened, that she had the majority of fibromyalgia**

tender points upon examination, she was still suffering from chest wall pain, swollen and stiff fingers and hands, and diffuse muscle and joint pain.  **Dr. Winn also expressly opined that Gregory was unable to return to work in any capacity.**  He also noted that Gregory's daughter accompanied her to an appointment and confirmed her cognitive difficulties.  In particular, in the June 2, 2015 office visit note, Dr. Winn wrote that due to her neuropsychiatric lupus or brain fog a return to work "will be forbidding and she will crash and burn if she returns just as she was doing when we pulled out of there—I say this as we have no cure for CNS lupus and because of prior experiences I have had with patients with these problems—they will all worsen severely if she should return under the pressures of having to make hundreds of daily decisions and supervise many people—she would be doomed to failure!!!"

38.    After receiving Gregory's appeal, The Standard referred her claim to MES Peer Review Services for a medical records review.  As part of its referral, The Standard asked for the medical records review physician to opine what Gregory's diagnoses were after April 21, 2015, whether she was diagnosed with a condition that fell under the definition of "Other Limiting Conditions," whether she had a diagnosis that fell under an exclusion to that definition, to identify Gregory's limitations and restrictions stemming from RA and lupus, whether the overlap of RA and lupus would cause greater impairment than those diagnoses would individually, whether the reported severity of Gregory's symptoms were supported by her medical documentation, whether Dr. Winn's assessment that her neuro-cognitive impairments would prevent her from working was reasonable, and to identify what medical treatment Gregory should be receiving for her cognitive difficulties.

39.    MES assigned Gregory's claim to Dr. Denise Beighe, who was board certified in Internal Medicine, but only had a "Subspecialty Certificate" Rheumatology and was not Board

Certified.  In her September 2, 2015 report, Dr. Beighe concluded based solely on her review of Gregory's medical records and The Standard's in-house physician and nurse reviews that: (1) **Gregory's diagnoses of lupus and RA were causing her impairment after April 21, 2015 and that the overlap of these two diagnoses caused her "synovitis of her hands which severely limit her ability to use her hands;"** (2) **that her RA and lupus were causing her impairments and not fibromyalgia**—*i.e.,* an **"Other Limited Condition;"** (3) **that she had a diagnosis of lupus "by ACR criteria"**—*i.e.,* an  express exclusion to the definition of **"Other Limited Conditions;"** (4) **that Gregory's synovitis in her hands limited her to "rare fingering, grasping and manipulation," that the impairment was "permanent," that her treatment options were "limited," and her condition was "unlikely" to improve;** (5) **that Gregory has "positive ANA, low complement and leukopenia along with arthritis to meet the ACR criteria for lupus,"** but that she could not confirm the existence of her neurocognitive problems without a neuropsychological evaluation or MRI of her brain; (6) **that the severity of Gregory's symptoms were supported by medical documentation, including the synovitis in her hands**; (7) that Gregory's neurocognitive problems might be supported by subjective statements made by her daughter; and (8) that she would expect Gregory to be treated with high-dose steroids (Gregory had been taking Prednisone for several years) and Rituxan—a drug used in combination with methotrexate to treat RA—for her cognitive problems.

40.      After obtaining Dr. Beighe's report, The Standard referred Gregory's claim for yet another vocational review, this time with Steve Cooper, a vocational case manager.  He was provided with Petersen's vocational reports, Gregory's Education, Training and Experience form and Dr. Beighe's report.  In his September 21, 2015 report, Cooper concluded that Gregory could perform the same three jobs previously identified by Petersen.  In concluding Gregory could

perform these occupations, he expressly noted that Gregory could only perform the jobs if her employer provided her with speech recognition software and only if she was not suffering from neurocognitive impairments.

41.     Based on Cooper's vocational analysis—which expressly assumed Gregory would have access to speech recognition software and that she had no cognitive problems—The Standard unreasonably decided to uphold its decision to terminate her LTD and premium waiver benefits.  In its November 2, 2015 letter notifying Gregory of its decision, it explained that its decision was based on the fact that there was allegedly no medical documentation supporting her cognitive impairments, that she was not receiving any treatment for her cognitive problems— despite the fact that her medical records confirmed she had been taking Nuvigil for lupus brain fog, Enbrel and methotrexate for treatment of her RA, and steroids for several years—and that she could use voice recognition software to perform a sedentary job.

42.     The Standard's investigation of Gregory's continued eligibility for LTD benefits, its decision to terminate those benefits, and its conclusion that it would uphold that decision on appeal was utterly unreasonable and was unsupported by the great weight of the medical evidence in her claim file and the information that was readily available to it.  As a result of The Standard's conduct, Gregory has experienced severe financial distress.

## H.     CAUSES OF ACTION

### BREACH OF CONTRACT

43.     Gregory incorporates paragraphs 1-42 as if fully set forth herein.

44.     According to the LTD Policy, The Standard has the duty to pay monthly LTD benefits as long as Gregory remains disabled under the Policy, is under the regular care of a

physician and submits proof of her disability. Gregory has met all of these requirements under the Policy.

45.     According to the Life Policy, The Standard has the duty to waive Gregory's premiums under the Life Plan as long as she remains "Totally Disabled."

46.     The Standard's termination of Gregory's LTD and premium waiver benefits under the LTD and Life policies and under the laws of the State of Texas, constitutes breaches of The Standard's contracts with Gregory. As a result of these breaches of contract, Gregory has suffered damages as are described in this petition.

## VIOLATION OF THE PROMPT PAYMENT OF CLAIMS ACT

47.     Gregory incorporates paragraphs 1-46 as if fully set forth herein.

48.     The Standard's acts, omissions, failures and conduct violate Section 542 of the Texas Insurance Code because it failed to pay Gregory's monthly LTD benefits within the applicable statutory period. In the event it is determined The Standard owes Gregory any monies on her LTD claim, then The Standard has automatically violated Section 542 in this case.

## VIOLATIONS OF THE DTPA

49.     Gregory incorporates paragraphs 1-48 as if fully set forth herein.

50.     Gregory is a consumer of goods and services provided by The Standard pursuant to the DTPA. Gregory has met all conditions precedent to bringing this cause of action against The Standard.

51.     Specifically, The Standard's violations of the DTPA include, without limitation, the following matters: By its acts, omissions failures, and conduct, The Standard has violated Sections 17.46(b)(5), (7), (9), (12), and (24) of the DTPA. The Standard's violations include, without limitation, (1) its unreasonable investigation and decisions on Gregory's claims, (2) its

failure to give Gregory the benefit of the doubt, and (3) its failure to continue to pay Gregory's monthly LTD benefits and failure to continue her premium waiver benefits, both for which liability had become reasonably clear. This gives Gregory the right to recover under Section 17.46(b)(2).

52.     Gregory is entitled to recover under Section 17.46(b)(5) of the DTPA because The Standard represented to Gregory that its insurance policy and The Standard's adjusting and investigative services had characteristics or benefits that it did not have.

53.     Gregory is entitled to recover under Section 17.46(b)(7) of the DTPA because The Standard represented that its insurance policies and The Standard's adjusting and investigative services were of a particular standard, quality, or grade when they were of another.

54.     Gregory is entitled to recover under Section 17.46(b)(9) of the DTPA because The Standard advertised its insurance policies and adjusting and investigative services with the intent not to sell them as advertised.

55.     Gregory is entitled to recover under Section 17.46(b)(12) of the DTPA because The Standard represented to Gregory that its insurance policies and its adjusting and investigative services conferred or involved rights, remedies, or obligations that it did not have.

56.     Gregory is entitled to recover under Section 17.46(b)(24) of the DTPA because The Standard failed to disclose information concerning goods or services which were known at the time of the transactions and such failure to disclose was intended to induce Gregory into transactions which Gregory would not have entered had the information been disclosed.

57.     Gregory is entitled to recover under Section 17.46(b)(12) and (20) and 17.50(a)(2) of the DTPA because The Standard has breached express warranties that Gregory

would continue to receive LTD benefits under the LTD Policy as long as she presented evidence she was "Disabled" and that she would continue to receive premium waiver benefits under the Life Policy as long as she presented evidence that she was "Totally Disabled."

58.     Gregory is entitled to recover under Section 17.50(a)(3) of the DTPA because The Standard's actions are unconscionable in that it took advance of Gregory's lack of knowledge, ability and experience to a grossly unfair degree.

59.     Gregory is entitled to recover under Section 17.50(a)(4) of the DTPA because The Standard's conduct, acts, omissions, and failures are unfair practices in the business of insurance.

60.     All of the above-described acts, omissions and failures of The Standard are a producing cause of Gregory's damages as described in the petition. All of the above-described acts, omissions, and failures of The Standard were done knowingly and intentionally as those terms are used in the Texas Deceptive Trade Practices Act.

## VIOLATIONS OF SECTION 541 OF THE TEXAS INSURANCE CODE

61.     Gregory incorporates paragraphs 1-60 as if fully set forth herein.

62.     Gregory has satisfied all conditions precedent to bring this cause of action.

63.     By its acts, omissions, failures and conduct, The Standard has engaged in unfair and deceptive acts or practices in the business of insurance in violation of section 541 of the Texas Insurance Code. Such violations include, without limitation all the conduct described in this petition, plus The Standard's unreasonable delays in the investigation of Gregory's claims and The Standard's failure to pay monthly LTD benefits and continue premium waiver benefits both for which liability had become reasonably clear.   They further include The Standard's failure to give Gregory the benefit of the doubt. Specifically, as described in Gregory's factual allegations, The Standard is guilty of the following unfair insurance practices:

a. Engaging in false, misleading and deceptive acts or practices in the business of insurance;

b. Engaging in unfair claims settlement practices;

c. Misrepresenting to Gregory pertinent facts or policy provisions relating to   the coverages at issue;

d. Not attempting in good faith to effectuate a prompt, fair and equitable settlement of claims submitted for which liability became reasonably clear;

e. Failing to affirm or deny coverage of Gregory's claims without conducting reasonable investigations with respect to the claims; and

f. Failing to promptly provide Gregory with reasonable explanations of the basis in the insurance policies in relation to the facts or applicable law for the termination of Gregory's benefits.

64.     The Standard also breached the Texas Insurance Code when it breached its duty of good faith and fair dealing.

65.     Gregory's damages resulted from The Standard's conduct.

67.     The Standard's acts, omissions, and failures were committed knowingly as that term is described in the Texas Insurance Code.

**BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**

68.     Gregory incorporates paragraphs 1-67 as if fully set forth herein.

69.     By its acts, omissions, failure and conduct, The Standard has breached its common law duty of good faith and fair dealing by terminating Gregory's LTD benefits and by failing to continue her premium waiver benefits without any reasonable basis and by failing to

19

conduct reasonable investigations to determine whether these were reasonable bases for the termination of her benefits.

70.    The Standard has also breached this duty by unreasonably delaying payment of Gregory's LTD benefits and by terminating her premium waiver benefits because The Standard knew or should have known that it was reasonably clear that Gregory was "Disabled" under the LTD Policy and "Totally Disabled" under the Life Policy. These acts, omissions, failures and conduct of The Standard are a proximate cause of Gregory's damages.

## I.    WAIVER AND ESTOPPEL

71.    The Standard has waived and is estopped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any of its denial letters to Gregory.

## J.    DAMAGES

72.    The above-described acts, omissions, failures and conduct of The Standard has caused Gregory's damages, which include, without limitation, the amount of her monthly LTD benefits and the value of her premium waiver benefits from April 15, 2014 to the present. Gregory is also entitled to recover consequential damages from The Standard's breach of contract. Gregory is also entitled to recover the amount of Gregory's claims plus an 18% per annum penalty on that claim against The Standard as damages under Section 542 of the Texas Insurance Code, plus pre-judgment interest and attorney's fees.

## K.    ADDITIONAL DAMAGES

73.    The Standard has also "knowingly" and "intentionally" committed deceptive trade practices and unfair insurance practices as those terms are defined in the applicable statutes. Because of The Standard's knowing and intentional misconduct, Gregory is entitled to additional

damages as authorized by Section 17.50(b)(1) of the DTPA. Gregory is further entitled to additional damages authorized by Section 541 of the Texas Insurance Code.

## L.     EXEMPLARY DAMAGES

74.     The Standard's breaches of its duty of good faith and fair dealing owed to Gregory was done intentionally, with a conscious indifference to the rights and welfare of Gregory, and with "malice" as that term is defined in Chapter 41 of the Texas Civil Practice and Remedies Code. These violations by The Standard are the type of conduct that the State of Texas protects in citizens against by the imposition of exemplary damages. Therefore, Gregory seeks the recovery of exemplary damages in an amount to be determined by the finder of fact that is sufficient to punish The Standard for its wrongful conduct and to set an example to deter The Standard and others similarly situated from committing similar acts in the future.

## M.     ATTORNEY'S FEES

75.     As a result of The Standard's conduct, Gregory has been forced to retain the undersigned attorney to prosecute this action and has agreed to pay reasonable attorney's fees. Gregory is entitled to recover these attorney's fees under Chapter 38 of the Texas Civil Practices and Remedies Code, Sections 541 and 542 of the Texas Insurance Code, and Section 17.50 of the DTPA.

## N.     JURY DEMAND

76.     Gregory asserts her right to a trial by jury, under Texas Constitution Article I, Section 15, and makes this demand for a jury trial at least 30 days before the date this case is set for trial in accordance with Texas Rule of Civil Procedure 216. Gregory tenders the fee of $30.00 as required by Texas Government Code Section 51.604.

## O.     PRAYER

Gregory prays that The Standard be cited to appear and answer herein, and that upon trial hereof, that Gregory have and recover such sums as would reasonably and justly compensate her in accordance with the rules of law and procedure, both as to actual damages, consequential damages, treble damages under the Texas Insurance Code and Texas Deceptive Trade Practices Act, and all punitive, additional, exemplary damages as may be found. In addition, Gregory requests the award of attorney's fees for the trial and any appeal of this case, for all costs of court, for prejudgment and post judgment interest as allowed by law, and for any other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully Submitted,

**THE LAW OFFICE OF JESSICA TAYLOR**
14100 San Pedro, Suite 602
San Antonio, Texas 78232
(210) 402-4022 (Telephone)
(210) 402-1225  (Fax)

By:   _/s/ Jessica Taylor_
        JESSICA TAYLOR
        Texas State Bar No. 24013546
        jessica@jtaylorlaw.com

FILED
6/2016 11:12:32 AM
onna Kay McKinney

**CIVIL CASE INFORMATION SHEET**

| CAUSE NUMBER *(FOR CLERK USE ONLY)*: 2016CI05933 | COURT *(FOR CLERK USE ONLY)*: 408TH |

exar County District Clerk

cepted By: Laura Rodriguez

STYLED  CHARLOTTE GREGORY V. STANDARD INSURANCE COMPANY

*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

| 1. Contact information for person completing case information sheet: | Names of parties in case: | Person or entity completing sheet is: |
|---|---|---|
| Name: JESSICA TAYLOR<br><br>Email: jessica@jtaylorlaw.com<br><br>Address: 14100 San Pedro Ste 602<br><br>City/State/Zip: San Antonio, TX 78232<br><br>Signature:<br><br>Telephone: 210-402-4022<br><br>Fax: 210-402-1225<br><br>State Bar No: 24013546 | Plaintiff(s)/Petitioner(s): CHARLOTTE GREGORY<br><br>Defendant(s)/Respondent(s): STANDARD INSURANCE COMPANY<br><br>*(Attach additional page as necessary to list all parties)* | ☒ Attorney for Plaintiff/Petitioner<br>☐ Pro Se Plaintiff/Petitioner<br>☐ Title IV-D Agency<br>☐ Other:<br><br>Additional Parties in Child Support Case:<br><br>Custodial Parent:<br><br>Non-Custodial Parent:<br><br>Presumed Father: |

**2. Indicate case type, or identify the most important issue in the case *(select only 1)*:**

| Civil | | | Family Law | |
|---|---|---|---|---|
| **Contract** | **Injury or Damage** | **Real Property** | **Marriage Relationship** | **Post-judgment Actions (non-Title IV-D)** |
| *Debt/Contract*<br>☐ Consumer/DTPA<br>☐ Debt/Contract<br>☐ Fraud/Misrepresentation<br>☐ Other Debt/Contract:<br><br>*Foreclosure*<br>☐ Home Equity—Expedited<br>☐ Other Foreclosure<br>☐ Franchise<br>☐ Insurance<br>☐ Landlord/Tenant<br>☐ Non-Competition<br>☐ Partnership<br>☐ Other Contract: | ☐ Assault/Battery<br>☐ Construction<br>☐ Defamation<br>*Malpractice*<br>☐ Accounting<br>☐ Legal<br>☐ Medical<br>☐ Other Professional Liability:<br><br>☐ Motor Vehicle Accident<br>☐ Premises<br>*Product Liability*<br>☐ Asbestos/Silica<br>☐ Other Product Liability List Product:<br><br>☐ Other Injury or Damage: | ☐ Eminent Domain/ Condemnation<br>☐ Partition<br>☐ Quiet Title<br>☐ Trespass to Try Title<br>☐ Other Property: | ☐ Annulment<br>☐ Declare Marriage Void<br>*Divorce*<br>☐ With Children<br>☐ No Children | ☐ Enforcement<br>☐ Modification—Custody<br>☐ Modification—Other<br><br>**Title IV-D**<br>☐ Enforcement/Modification<br>☐ Paternity<br>☐ Reciprocals (UIFSA)<br>☐ Support Order |
| | | **Related to Criminal Matters** | **Other Family Law** | **Parent-Child Relationship** |
| | | ☐ Expunction<br>☐ Judgment Nisi<br>☐ Non-Disclosure<br>☐ Seizure/Forfeiture<br>☐ Writ of Habeas Corpus— Pre-indictment<br>☐ Other: | ☐ Enforce Foreign Judgment<br>☐ Habeas Corpus<br>☐ Name Change<br>☐ Protective Order<br>☐ Removal of Disabilities of Minority<br>☐ Other: | ☐ Adoption/Adoption with Termination<br>☐ Child Protection<br>☐ Child Support<br>☐ Custody or Visitation<br>☐ Gestational Parenting<br>☐ Grandparent Access<br>☐ Parentage/Paternity<br>☐ Termination of Parental Rights<br>☐ Other Parent-Child: |
| **Employment** | | **Other Civil** | | |
| ☐ Discrimination<br>☐ Retaliation<br>☐ Termination<br>☐ Workers' Compensation<br>☐ Other Employment: | | ☐ Administrative Appeal<br>☐ Antitrust/Unfair Competition<br>☐ Code Violations<br>☐ Foreign Judgment<br>☐ Intellectual Property | ☐ Lawyer Discipline<br>☐ Perpetuate Testimony<br>☐ Securities/Stock<br>☐ Tortious Interference<br>☐ Other: | |
| **Tax** | **Probate & Mental Health** | | | |
| ☐ Tax Appraisal<br>☐ Tax Delinquency<br>☐ Other Tax | *Probate/Wills/Intestate Administration*<br>☐ Dependent Administration<br>☐ Independent Administration<br>☐ Other Estate Proceedings | ☐ Guardianship—Adult<br>☐ Guardianship—Minor<br>☐ Mental Health<br>☐ Other: | | |

**3. Indicate procedure or remedy, if applicable *(may select more than 1)*:**

| | | |
|---|---|---|
| ☐ Appeal from Municipal or Justice Court<br>☐ Arbitration-related<br>☐ Attachment<br>☐ Bill of Review<br>☐ Certiorari<br>☐ Class Action | ☐ Declaratory Judgment<br>☐ Garnishment<br>☐ Interpleader<br>☐ License<br>☐ Mandamus<br>☐ Post-judgment | ☐ Prejudgment Remedy<br>☐ Protective Order<br>☐ Receiver<br>☐ Sequestration<br>☐ Temporary Restraining Order/Injunction<br>☐ Turnover |

**4. Indicate damages sought *(do not select if it is a family law case)*:**
☐ Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
☐ Less than $100,000 and non-monetary relief
☒ Over $100,000 but not more than $200,000
☐ Over $200,000 but not more than $1,000,000
☒ Over $1,000,000

**Exhibit**

**3**

FLED
6/2016 11:11:08 AM
onna Kay McKinney
exar County District Clerk
ccepted By: Lisa Morales

Cause Number: **2016CI05933**

District Court : **408TH**



## Donna Kay M$^c$Kinney
## Bexar County District Clerk

### Request for Process

Style: CHARLOTTE GREGORY                Vs. STANDARD INSURANCE COMPAY

**Request the following process:** (Please check all that Apply)

☑ Citation ☐ Notice ☐ Temporary Restraining Order ☐ Notice of Temporary Protective Order
☐Temporary Protective Order ☐ Precept with hearing ☐Precept with*out* a hearing ☐Writ of Attachment
☐Writ of Habeas Corpus ☐ Writ of Garnishment ☐Writ of Sequestration ☐Capias ☐ Other: _____

**1.**
**Name:** STANDARD INSURANCE COMPANY
**Registered Agent/By Serving:** CT CORPORATION SYSTEM
**Address** 1999 BRYAN STREET, SUITE 900, DALLAS, TEXAS 75201-3136
**Service Type:** (Check One) ☐*Private Process* ☐*Sheriff* ☐*Publication* (Check One) ☐*Commercial Recorder* ☐*Hart Beat* ☐*Courthouse Door*
☑*Certified Mail* ☐ *Registered Mail* ☐*Out of County* ☐*Secretary of State* ☐*Commissioner of Insurance*

**2.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐*Private Process* ☐*Sheriff* ☐*Publication* (Check One) ☐*Commercial Recorder* ☐*Hart Beat* ☐*Courthouse Door*
☐*Certified Mail* ☐ *Registered Mail* ☐*Out of County* ☐*Secretary of State* ☐*Commissioner of Insurance*

**3.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐*Private Process* ☐*Sheriff* ☐*Publication* (Check One) ☐*Commercial Recorder* ☐*Hart Beat* ☐*Courthouse Door*
☐*Certified Mail* ☐ *Registered Mail* ☐*Out of County* ☐*Secretary of State* ☐*Commissioner of Insurance*

**4.**
**Name:** _____
**Registered Agent/By Serving:** _____
**Address** _____
**Service Type:** (Check One) ☐*Private Process* ☐*Sheriff* ☐*Publication* (Check One) ☐*Commercial Recorder* ☐*Hart Beat* ☐*Courthouse Door*
☐*Certified Mail* ☐ *Registered Mail* ☐*Out of County* ☐*Secretary of State* ☐*Commissioner of Insurance*

**Title of Document/Pleading to be Attached to Process:** _____

**Name of Attorney/Pro se:** JESSICA TAYLOR      **Bar Number:** 24013546
**Address:** 14100 SAN PEDRO, SUITE 602      **Phone Number:** 210-402-4022
SAN ANTONIO, TEXAS 78232

**Attorney for Plaintiff** YES ____ **Defendant** ____ **Other** _____

***IF SERVICE IS NOT PICKED UP WITHIN 14 BUSINESS DAYS, SERVICE WILL BE DESTROYED****

Exhibit

4

CERTIFIED MAIL #70150640000665813635 **Case Number: 2016-CI-05933**

2016CI05933 S00001

**CHARLOTTE GREGORY**

*Plaintiff*

vs.

**STANDARD INSURANCE COMPANY**

*Defendant*

(Note: Attached document may contain additional litigants).

IN THE DISTRICT COURT
408th JUDICIAL DISTRICT
BEXAR COUNTY, TEXAS

**CITATION**

**"THE STATE OF TEXAS"**

**DIRECTED TO: STANDARD INSURANCE COMPANY**

BY SERVING ITS REGISTERED AGENT, C T CORPORATION SYSTEM
1999 BRYAN ST 900
DALLAS TX 75201-3136

"You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you." Said petition was filed on the 6th day of April, 2016.

ISSUED UNDER MY HAND AND SEAL OF SAID COURT ON THIS 8TH DAY OF APRIL A.D., 2016.

PETITION

JESSICA SPANGLER TAYLOR
ATTORNEY FOR PLAINTIFF
14100 SAN PEDRO AVE 602
SAN ANTONIO, TX 78232-4361

**Donna Kay McKinney**
**Bexar County District Clerk**
101 W. Nueva, Suite 217
San Antonio, Texas 78205

By: *Laura Ann Rodriguez*, Deputy

---

Officer's Return

Came to hand on the 8th day of April 2016, A.D., at 9:38 o'clock A.M. and EXECUTED (NOT EXECUTED) by CERTIFIED MAIL on the 14 day of March , A.D., 2016, by delivering to Chris Wells a true copy of this Citation, upon which I endorse the date of delivery, together with the accompanying copy of the PETITION

Cause of failure to execute this Citation is _____



FILED
O'CLOCK AM

APR 1 8 2016
DONNA KAY McKINNEY
District Clerk, Bexar County, Texas
BY Dhha Cantu
DEPUTY

**Donna Kay McKinney**
Clerk of the District Courts of
Bexar County, Texas

By: *Laura Ann Rodriguez*, Deputy

**Exhibit 5**

RETURN TO COURT (DK003)



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®.*

OFFICIAL USE

Certified Mail Fee

$

Extra Services & Fees *(check box, add fee as appropriate)*
☐ Return Receipt (hardcopy)       $ _____
☐ Return Receipt (electronic)     $ _____    Postmark
☐ Certified Mail Restricted Delivery  $ _____    Here
☐ Adult Signature Required        $ _____
☐ Adult Signature Restricted Delivery $ _____

Postage

$

STANDARD INSURANCE COMPANY
C/O C T CORPORATION SYSTEM
1999 BRYAN ST 900
DALLAS, TX  75201-3136

2016C105933  4/8/2016  C1TCM  LAURA ANN RODRIGUEZ

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

7015 0640 0000 9581 3635

**SENDER: COMPLETE THIS SECTION**

- Complete Items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

Article Addressed to:

STANDARD INSURANCE COMPANY
C/O C T CORPORATION SYSTEM
1999 BRYAN ST 900
DALLAS, TX 75201-3136

016CI05933 4/8/2016 CITCM LAURA ANN RODRIGUEZ

1590 9401 0004 5205 1573 94

7015 0640 0006 6581 3635

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X ☐ Agent
☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

Chris Wells                      MAR 14 2016

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Form 3811, April 20     DOCUMENT SCANNED AS FILED     Domestic Return Receipt



Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4® in this box•

Donna Kay McKinney
Bexar County District Clerk
101 W. Nueva, Suite 217
San Antonio, TX 78205

USPS TRACKING#

9590 9401 0004 5205 1573 94

No. 2016-CI-05933

| | | |
|---|---|---|
| CHARLOTTE GREGORY, | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| v. | § | BEXAR COUNTY, TEXAS |
| | § | |
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | 408TH JUDICIAL DISTRICT |

## DEFENDANT'S ORIGINAL ANSWER

Defendant Standard Insurance Company ("Standard") files its original answer, and states:

1.     **General Denial.** Subject to such admissions and stipulations as may be made at or before time of trial, Standard denies generally and specially the material allegations in Plaintiff's Original Petition, pursuant to TEX. R. CIV. P. 92, and demands strict proof thereof in accordance with the requirements of the laws of this state.

2.     **Relief Requested.** Standard requests the following relief:

(a)     That Plaintiff take nothing by reason of her suit;

(b)     That Standard be dismissed with its costs; and

(c)     That Standard have such other and further relief, both general and special, at law and in equity, to which it may show itself justly entitled.

Exhibit

6

Dated:  May 3, 2016          Respectfully submitted,


By:  *s/ Ryan K. McComber*
  Ryan K. McComber
  State Bar No. 24041428
  ryan.mccomber@figdav.com
  Kristina A. Kiik
  State Bar No. 24074532
  kristina.kiik@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas  75202
Telephone: (214) 939-2000
Facsimile: (214) 939-2090

ATTORNEYS FOR DEFENDANT
STANDARD INSURANCE COMPANY


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing instrument has been served on the following counsel of record via electronic filing on May 3, 2016:

Jessica Taylor        Via E-File:  Efile.TXCourts.gov
Jessica@jtaylorlaw.com
The Law Office of Jessica Taylor
14100 San Pedro, Suite 602
San Antonio, Texas  78232


    *s/ Ryan K. McComber*
    Ryan K. McComber